IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS ALTMAN and ROXANA ALTMAN, husband and wife, | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 05-956 |
| | ) |
| BOBCAT COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Plaintiff husband was injured when struck in the head by a backhoe. He asserted claims of strict liability and negligence against the equipment manufacturer as well as the seller. Plaintiff wife asserted a claim for loss of consortium. The Defendants seek the entry of summary judgment in their favor on all claims. Because the Plaintiff husband, who was not operating the equipment at the time of the injury, was not an intended user or consumer of the equipment, summary judgment is granted in favor of the Defendants on the strict liability claims. The negligence and loss of consortium claims will go forward.

### OPINION

Plaintiff Thomas Altman ("Altman") was employed by First Energy as part of a

1

team which located underground faults.  On July 26, 2003, Altman and others on the team responded to an emergency call.  Altman and a co-worker, Andrew Sagulla, determined the exact location of the underground faults and marked the area with paint.  A Model 863 G Series Bobcat Skid Steer Loader ("the Loader") with a 709 Backhoe ("the Backhoe") attached to it, was brought in to excavate the area and expose the underground cable so as to facilitate repairs.  During the process, Altman was struck with the Backhoe.  Altman sustained severe injuries.

Altman has brought suit against Defendants Ingersoll-Rand Company a/k/a Melroe-Ingersoll Rand t/d/b/a Bobcat, Clark Equipment Company, Melroe Company and Bobcat Company ("Bobcat") and Leppo, Inc., d/b/a Leppo Rents, Leppo Equipment, Leppo Rents Bobcat of Akron ("Leppo").  Altman has asserted claims of strict liability and negligence against Bobcat and Leppo.  He also initially asserted, then later withdrew, a breach of warranty claim.  His wife, Plaintiff Roxanne Altman, has brought a loss of consortium claim.

Both Bobcat and Leppo have filed Motions for Summary Judgment.  See Docket Nos. 55 and 58.  Both argue that Altman's strict liability claim fails because he was not an "intended user" of the Loader and Backhoe and because the Loader and Backhoe were not unreasonably dangerous according to the "risk/utility" analysis. Both also contend that Altman's negligence claim fails as a matter of law.  Bobcat also seeks the entry of summary judgment on the loss of consortium claim and seeks an amendment of the caption. Altman opposes the entry of summary judgment on all claims.

2

After careful consideration, and for the reasons set forth below, the Motions are granted in part and denied in part.

STANDARD OF REVIEW

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. A fact is material when it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at

3

322.  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

ANALYSIS

I. Strict Liability

Altman contends that Bobcat and Leppo are strictly liable because the Loader and Backhoe "lacked adequate safeguards, had improper warnings and [the Defendants] provided inadequate and dangerous instructions to the operator of the Backhoe." See Docket No. 65, p. 2.  Thus, Altman's strict liability claim is based both upon a design defect and upon a failure to warn.  Both strict liability claims are governed by § 402A of the Restatement (Second) of Torts. See Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966).

"According to Pennsylvania's interpretation of Section 402A, a determination of whether a product is defective requires a two step analysis: (1) whether, as a matter of law, the product was unreasonably dangerous to the intended user or consumer; and (2) if so, whether as a matter of fact for the jury, the product was sold in a defective condition." Berrier v. Simplicity Corp., 413 F. Supp.2d 431, 37-38 (E.D. Pa. 2005), citing, Azzarello v. Black Bros. Co., Inc., 480 Pa. 547, 391 A.2d 1020, 1026 (1978). Bobcat and Leppo advance two arguments in support of summary judgment with respect to the court's inquiry under the first prong: (1) Altman was not an intended "user" of the Loader and Backhoe; and (2) the Loader and Backhoe were

4

not unreasonably dangerous.  Because I find merit with the first argument, I need not address the second.

In <u>Phillips v. Cricket Lighters</u>, 576 Pa. 644, 841 A.2d 1000 (2003) (plurality opinion authored by Cappy, C.J., with Castille, J., Newman, J., Saylor, J., and Eakin, J. concurring on this point), the Pennsylvania Supreme Court found that, as in a strict liability failure to warn claim, "in a strict liability design defect claim, the plaintiff must establish that the product was unsafe for its *intended user*." <u>Phillips</u>, 841 A.2d at 1007 (emphasis added).  The <u>Phillips</u> court found that the trial court had correctly granted summary judgment in favor of the manufacturer and distributor of a butane lighter which did not have child resistant features, because the two year old child who had gained access to the lighter was not an "intended user" of the lighter.

Altman argues that he need not prove that he is an "intended user" because the <u>Phillips</u> case lacks precedential value and is not binding. <u>See</u> Docket No. 65, p. 11.[1] I disagree.   In <u>Pennsylvania Dep't. of General Services v. United States Mineral Products Co.</u>, 587 Pa. 236, 898 A.2d 590 (2006), the Pennsylvania Supreme Court cited to the <u>Phillips</u> decision for the proposition that, under strict liability actions, "this Court has held that a manufacturer can be deemed liable only for harm that occurs

---

[1] He also points to the Pennsylvania Suggested Standard Civil Jury Instructions as a reason to disregard <u>Phillips</u>.  The Instructions state:

> The court's inability to reach a majority consensus on the primary issue has prevented the <u>Phillips</u> case from becoming precedential authority and created confusion on how the trial court is to charge the jury.  Because only two justices embraced the "intended user" doctrine, the subcommittee cannot announce that the doctrine has been adopted in the Commonwealth.

Pennsylvania Standard Civil Jury Instructions, 8.02 Definition of Design Defect, Subcommittee Note, "Intended User."  I find Altman's reliance on the <u>suggested</u> instructions unconvincing.  This is a subcommittee note.  It has not been adopted by the Pennsylvania Supreme Court and it conflicts directly with <u>Phillips</u>.

in connection with a product's intended use by an intended user ... ." Moreover, federal district courts within this Circuit have also followed the Phillips decision when applying Pennsylvania law. See Berrier v. Simplicity Corp., 413 F. Supp.2d 431, 444 (E.D. Pa. 2005) (granting summary judgment in favor of a manufacturer of a lawn mower on a strict liability claim where a minor received injuries because the minor was not an "intended user," and stating that "most recently, six justices of the Pennsylvania Supreme Court reiterated that to recover under a strict liability cause of action, 'the plaintiff must establish that the product was unsafe for its intended user,' albeit with three justices expressing dissatisfaction with the narrowness of such a limitation."); and Makadji v. GPI Division of Harmony Enterprises, Inc., Civ. No. 5-3044, 2006 WL 3498324 at * 3 (E.D. Pa. Dec. 1, 2006) (citing Phillips for the proposition that in a strict liability failure to warn claim, "the warning must notify the intended users of the unobvious dangers inherent in the product.") (emphasis added).[2]

The question remains then whether Altman was an intended user or consumer of the Loader and Backhoe.  The undisputed facts reveal that Altman's task on the day of the accident was to operate the "thumper" device. See Docket No. 59-4, p. 26.  He was to locate the general location of the underground fault and then proceed to the work van. Id., p. 27.  His work did not require him to be anywhere

---

[2] I recognize that Section 1 of the Restatement (Third) of Torts eliminates the reference to "user or consumer" which is at issue here:

> One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.

See Restatement (Third) of Torts, Section 1 (1998).  If the Restatement (Third) of Torts had been adopted in Pennsylvania, Altman would not have to demonstrate that he was an intended user or consumer of the Loader and Backhoe.  Nevertheless, it has not been adopted in Pennsylvania and the Phillips decision remains the law.

near the Loader or Backhoe.  Indeed, he had never operated the Loader or Backhoe, he was not operating either that day and in fact had never even been trained to use the Loader or Backhoe.  Altman was injured only after he left the van and wandered into the area adjacent to the Loader and Backhoe.

Bobcat and Leppo argue that these facts indicate that Altman was merely a "bystander" and that bystanders are not permitted to recover. See Berrier, 413 F. Supp.2d 431 (finding that minor who had not purchased the lawnmower, was not operating the lawnmower or riding on the lawnmower at the time of the accident was a bystander rather than an intended user or consumer of the lawnmower); VanBuskirk v. West Bend Co., 100 F. Supp.2d 281, 285 (E.D. Pa. 1999) (finding that the guardians of a child burned by an allegedly defective fryer were precluded from recovering on a strict liability claim, in part, because the child was an innocent bystander rather than an intended user); and Riley v. Warren Mfg., Inc., 455 Pa. Super. 384, 688 A.2d 221 (1997) (affirming a directed verdict in the manufacturer's favor on a strict liability claim on the grounds that a child who was injured by his grandfather's bulk feed trailer was not an intended user or consumer of the product).

Altman counters that he was an intended user of the Loader and Backhoe because he was a member of the First Energy team which was involved in the earth moving process.  He cites to the Supplemental Report of Christopher Ferrone, Senior Mechanical Engineer, in support of this assertion.  Ferrone states that various personnel work together as a team during the process of earthmoving and that all

7

"team members are considered users of the machine." See Docket No. 68-11, p. 6. Altman also references the Third Circuit court's decision in Surace v. Caterpillar, 111 F.3d 1039 (3d Cir. 1997), where a construction worker was injured when his foot was run over by a pavement profiler.  In Surace, the Third Circuit court reversed and remanded a district court's grant of summary judgment in favor of the profiler's manufacturer on the worker's strict liability claim.

        After careful consideration, I find that Altman was not an intended user or consumer of the Loader and Backhoe and, as such, he is not entitled to advance a strict liability claim against the Defendants.  This determination is not something within the province of an expert.  As such, I find Ferrone's conclusory statement that all team members are "users" of the equipment to be irrelevant.  Further, Altman's reliance upon Surace is unconvincing.  The Surace court never discusses the issue of intended user or consumer.  Apparently, the defendant never raised that defense.  Consequently, I do not think one can read Surace to stand for the proposition that the Third Circuit court has found that innocent bystanders are entitled to recover on strict liability claims under Pennsylvania law.  I find the facts of this case to be more closely aligned with those presented in Phillips, Berrier, VanBuskirk, and Riley.  Altman was not an intended user or consumer of the Loader or Backhoe.  Consequently, the Defendants' Motions for Summary Judgment are granted with respect to the strict liability claims.

## II. Negligence

        Altman also raises claims of negligence.  To prevail on a claim of negligence,

Altman must establish: (1) that the Defendant(s) owed a duty to conform to a certain standard of conduct; (2) that the Defendant(s) breached that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual loss or damage. Griggs v. BIC Corporation, 981 F.2d 1429, 1434 (3d Cir. 1992). While Bobcat and Leppo both contend that Altman's negligence claim is fatally flawed, they advance different arguments. Consequently, I will separately address each Defendants' contentions.

A. Bobcat

Bobcat focuses its argument upon the second element in a claim for negligence - breach of a duty. Without elaboration, Bobcat surmises that Altman cannot have demonstrated a breach of duty because Altman has admitted that the designs of the Loader and Backhoe do not violate any industry standards or state or federal laws. See Docket No. 60, p. 19 and citations contained therein.[3] Significantly, Bobcat has not cited to any case law suggesting that such admissions are dispositive. Without providing this Court with any analysis of case law suggesting that it is entitled to summary judgment, I cannot conclude that Altman's admissions are sufficient to warrant the entry of summary judgment in Bobcat's favor. Consequently, Bobcat's Motion is denied in this regard.

B. Leppo

Altman also asserts several negligence claims against Leppo. See Complaint,

---

[3] Bobcat makes a fleeting allegation that the Plaintiffs did not produce any evidence to establish a standard of care. See Docket No. 60, p. 19. However, I decline to consider an argument to which Bobcat has devoted less than one sentence and no analysis.

¶ 41 a-e.  Leppo seeks the entry of summary judgment on all these claims.  A careful review of Altman's Brief in Opposition, however, reveals that Altman intends to press only two claims against Leppo - that Leppo was negligent in that it failed to adequately warn him of the known hazards of being struck by the Loader and Backhoe and that Leppo was negligent in that it failed to provide him and others similarly situated with training as to what to do in the event that someone entered the swing arm radius. See Docket No. 62, p. 8-12.  As to these claims, Leppo simply argues that there is no evidence that it breached these duties.  In support of this argument, Leppo cites to the warnings and instructions provided both on the Loader and Backhoe themselves, as well as in the accompanying manuals.  Leppo also points to the extensive training it gave to Greg Muscarella, the individual operating the machinery when Altman was injured.

While Leppo's evidence on these points is extensive, it misses the point.  Altman argues that Leppo failed to train and warn him.  Leppo has not demonstrated otherwise.[4]  Further, Leppo did not point to any evidence suggesting that training was provided with respect to what to do in the event that someone actually does enter the swing arm radius.  Accordingly, the Motion for Summary Judgment is denied insofar as Altman is entitled to move forward on the two negligence claims identified above.

---

[4] Leppo might not have had a duty to train Altman, as Altman did not operate the machinery.  Yet Leppo did not raise this argument.  It sought to defeat these particular negligence claims only by arguing that it did not breach a duty.

### III. Loss of Consortium

Bobcat also seeks the entry of summary judgment on Roxana Altman's loss of consortium claim.  Bobcat reasons that the loss of consortium claim must fail because all of Altmans' claims against Bobcat are fatally flawed.  While I agree with the basic proposition that the success of Roxana Altman's loss of consortium claim is predicated upon the success of Altman's claim(s), the entry of summary judgment is premature.  As stated above, Bobcat has not carried its burden of demonstrating that it is entitled to the entry of summary judgment in its favor on the negligence claim.  Consequently, Roxana Altman's loss of consortium claim will go forward as well.

### IV. The Caption

Finally, Bobcat requests that the caption be amended to reflect that the Altman's claims, insofar as they are asserted against the Bobcat Defendants, are against only "Bobcat Company, an unincorporated business unit of Clark Equipment Company." See Docket No. 60, p. 20.  Bobcat explains that the Altmans have admitted that they have no evidence that Ingersoll Rand Company and Melroe Company designed or manufactured the equipment at issue.

The Motion is granted in this regard as the Altmans apparently do not contest this request. See Docket No. 64, ¶ 6.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

11

ORDER OF COURT

AND NOW, this **26th** day of February, 2007, after careful consideration, and for the reasons  set forth in the accompanying Opinion, it is Ordered that the Defendants' Motions for Summary Judgment (Docket Nos. 55 and 58) are granted in part and denied in part.  They are granted insofar as summary judgment is granted in favor of the Defendants with respect to the Plaintiffs' claims of strict liability.  The Motions are denied insofar as the Plaintiffs' claims of negligence, as more fully set forth in the Opinion, will go forward, as will the claim for loss of consortium.

It is further ORDERED that the Caption shall be amended, with respect to the Bobcat Defendants, to read "Bobcat Company, an unincorporated business unit of Clark Equipment Company."

It is also further ORDERED that Defendants' Motion to Strike the Plaintiffs' Supplemental Expert Report (Docket No. 71) and the Defendants' Motion to Strike Plaintiffs' Statement of Undisputed Facts (Docket Nos. 70 and 73) are DENIED.

BY THE COURT:

/S/   Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge

12