IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS ALTMAN and ROXANA ALTMAN, husband and wife, | CIVIL ACTION NO: 2005-00956 |
| Plaintiffs, | |
| vs. | |
| BOBCAT COMPANY, et al., | |
| Defendants. | |

### DEFENDANT BOBCAT COMPANY'S MOTION IN LIMINE

AND NOW, comes the Defendant, Bobcat Company ("Bobcat"), by and through its attorneys, Wayman, Irvin & McAuley, LLC, and files the following Motion in Limine:

1. The Plaintiffs retained Mr. Christopher W. Ferrone, a mechanical engineer, to comment on the design of Bobcat's 709 Backhoe and Model 863 G Series Skid Steer Loader. The Plaintiffs filed a copy of Mr. Ferrone's June 27, 2006 expert report and a supplemental report dated September 7, 2006 which essentially reasserted the conclusions/opinions from the initial report with additional conclusions based upon the arguments contained in Bobcat's Motion for Summary Judgment as well as Bobcat and Leppo's expert reports. (A copy of both of Mr. Ferrone's reports are attached hereto and collectively designated as Exhibit "A").

2. Mr. Ferrone was deposed on January 11, 2008.

3. The Complaint pleads the accident was the result of the operator's

1

unintentional activation of the boom swing control lever. At the time of the accident, the 709 Backhoe was attached to a Model 863 G Series Bobcat Skid Steer Loader (the "Skid steer loader").

4. The machines were owned by Mr. Altman's employer, First Energy Corporation ("First Energy"). The Backhoe Attachment and Skid Steer Loader were manufactured by Bobcat Company ("Bobcat"), an unincorporated business unit of the Clark Equipment Company.

5. As a result of the Bobcat's Motion for Summary Judgment, the Plaintiffs' strict liability action was dismissed. Plaintiffs' only remaining actions are an action in negligence, and Plaintiff-Wife's claim for loss of consortium.

6. Plaintiffs have admitted that they had no evidence that the design of the 863 G Skid Steer Loader or 709 Backhoe were contrary to any industry standards. (A copy of the relevant portion of Plaintiffs Supplemental Answers to Defendant Bobcat's Request for Admissions is attached hereto as Exhibit "B").

7. Pursuant to FRCP 36(b), any matter admitted under Requests for Admission under Rule 36 is conclusively established. The Official Comment to Rule 36 identifies that the purpose of the Rule is to narrow the issues for trial by eliminating the issues upon which the parties agree. *See also, Airco Industrial Gases, Inc., Div. of BOC Group, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.3d 1028 (3d Cir. 1988).

8. Accordingly, by way of the Plaintiffs' responses to the Request for Admissions, the Plaintiffs may no longer contest that the Skid Steer Loader and/or 709 Backhoe Attachment comply with all applicable industry standards. FRCP 36.

9. Mr. Ferrone's initial report consists of fourteen (14) conclusions/opinions that are not supported by any engineering or scientific analysis or evidence. *See*, Exhibit A at p. 4-5. Mr. Ferrone's supplemental report consists of thirteen additional conclusion/opinions which appear to be designed to defeat the Defendants' Motions for Summary Judgment on the issue of whether Mr. Altman was a user of the equipment. This Court determined that Mr. Altman was not a user of the 709 Backhoe, and dismissed his claim for strict liability.

10. Mr. Ferrrone's report indicates no methodology upon which he bases his conclusions. *Id.*

11. Mr. Ferrone's report reflects only that Mr. Ferrone observed the 709 Backhoe and 863 G Skid Steer Loader after First Energy made its unapproved modifications.

12. On January 10, 2008, the parties conducted the deposition of Christopher Ferrone.

13. At the deposition, Mr. Ferrone testified to his alleged investigation and examination of the Bobcat Model 863 G Skid Steer Loader and Bobcat Model 709 Backhoe Attachment. (A copy of the relevant portions of Mr. Ferrone's Deposition Transcript of January 10, 2008 is attached hereto as Exhibit "C").

3

14. Mr. Ferrone admitted that he did not consult any standards prior to rendering his report, but rather relied on the information that was "in my head", and only pulled the standards together within a week of his deposition solely for the purpose of his deposition. Ex. C at p. 79-80.

15. Mr. Ferrone admitted that none of these standards are contained in his report, but were only copied in the week prior to the deposition. Ex. C at p. 87-88.

16. Mr. Ferrone stated that he knew these standards existed, and he could give his opinions without them. Ex. C at p. 95.

17. Mr. Ferrone admitted that his "research" into the Model 709 Backhoe's alleged design defect consisted of sending his engineering assistant around Chicago to observe other backhoes as part of a "research survey." Ex. C at p. 110-112.

18. Mr. Ferrone admitted that he could not corroborate his definition of "operation" of the machine with any manual, whether produced by Bobcat or any other manufacturer. Ex. C at p. 125-127.

19. Mr. Ferrone testified that he could not point to any specific industry source that defines "operation" as the active digging, and that idling is not operation. Ex. C at p. 149-151.

20. Mr. Ferrone admits that he knows that "various ANSI standards" discussing warning content and warning architecture, but when asked to identify those standards, he stated "I don't know off the top of my head" and that he did not bother to review such standards prior to issuing his report. Ex. C at p. 149-151.

4

21. Mr. Ferrone testified that one of the standards he relied upon, ISO 6165, he only collected because it said "terminology for earth-moving equipment" but admitted that it does not apply to the 709 Backhoe design at issue in this case. Ex. C at p. 170.

22. In support of his opinion that the warnings were defective, Mr. Ferrone states "I believe there's an ANSI standard that describes how to design a warning," but could not identify any particular standard. Ex. C at p. 178.

23. Mr. Ferrone testified that he is not aware of any particular treatise or textbook that would support his conclusions, but that he was sure he could find one. Ex. C at 179-180. To date, Mr. Ferrone has not identified any such treatise.

24. Rule 26(a)(2) of the Federal Rules of Civil Procedure requires the testifying expert to produce a report which includes:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the data or other information considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;

F.R.C.P. 26(a)(2)(B).

25. A plain reading of Ferrone's reports indicates that there simply is no basis for the opinions reflected, nor any data reviewed beyond the depositions of the witnesses involved and various manuals for the 709 Backhoe, Skid Steer Loader, and assorted unspecified machinery from competitor entities such as John Deere and Kubota.

5

26. Mr. Ferrone's reports reflect no engineering analysis or any scientific study.

27. FRCP 26(a)(2)(B) requires that the disclosure of the expert's opinion be disclosed no later than ninety (90) days prior to the start of trial.

28. A plain reading of Ferrone's report, when compared with the above-referenced portions of Ferrone's deposition testimony reflects that Ferrone assembled a magnitude of information after issuing his report, and is attempting to achieve some level of credibility once his testimony has been challenged.

29. Ferrone's deposition occurred less than 90 days before the scheduled start date of the trial in this matter.

30. Ferrone testified that he did not specifically consult the international standards referenced in his deposition prior to issuing either of his reports produced pursuant to FRCP 26(a)(2)(B) in this matter, but rather only collected the standards in the week before his deposition after the Defendants challenged his testimony under *Daubert*.

31. A plain reading of Ferrone's deposition testimony also demonstrates that be relied only on his general engineering knowledge to formulate his opinions.

32. Accordingly, at Ferrone's deposition, he testified to numerous engineering standards as well as expert opinions that were not previously disclosed in accordance with FRCP 26(a)(2)(B).

33. Defendant Bobcat will suffer prejudice as a result of Plaintiffs' failure to disclose the extent of the expert's opinion as required by FRCP 26(a)(2) as trial in this matter is scheduled to commence in less than 90 days, and the Defendants lack sufficient time to prepare a sufficient rebuttal to Ferrone's opinions.

34. As a result of the Plaintiffs' failure to comply with FRCP 26(a)(2)(B), the Plaintiffs must be precluded from presenting Ferrone's expert testimony relative to anything above and beyond those contained in his expert report.

WHEREFORE, Defendant Bobcat respectfully requests this Honorable Court to enter an Order limiting any expert testimony from Christopher W. Ferrone solely to the matters contained within his reports, and not including the testimony from his January 10, 2008 deposition where he set forth various opinions regarding Bobcat's failure to comply with international design standards.

Respectfully submitted,

By: /s/ Mark J. Gesk
Mark J. Gesk, Esquire
Pa ID No. 26392
Ian C. Walchesky, Esquire
Pa ID No. 200222

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Motion in Limine** has been served on the following counsel of record by electronic service and first class U.S. mail, postage pre-paid this _____ day of _____, 2008:

> Dallas Hartman, Esquire
> Wayne P. Reid, Esquire
> 2815 Wilmington Road
> New Castle, PA 16105
> *(Counsel for Plaintiffs)*

> Marna K. Blackmer, Esquire
> Walsh, Collis & Blackmer, LLC
> The Gulf Tower, Suite 1400
> 707 Grant Street
> Pittsburgh, PA 15219
> *(Counsel for Leppo, Inc.)*

WAYMAN, IRVIN & McAULEY, LLC

BY: /s/ Mark J. Gesk
Mark J. Gesk, Esquire