IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Thomas Altman and Roxana Altman, husband )
and wife )
)
      Plaintiffs, )
)
-vs- )
) Civil Action No. 05-956
)
)
Ingersoll-Rand Company a/k/a Melroe-Ingersoll- )
Rand t/d/b/a Bobcat, et al. )
)
      Defendants. )

AMBROSE, Chief District Judge.

# OPINION AND ORDER

## I. Procedural History

Before the Court are four motions, all of which concern the testimony of Plaintiffs' engineering expert, Christopher Ferrone: (1) Plaintiffs filed a motion to amend an admission made in a supplemental response to Defendant-Bobcat's request for admissions; (2-3) Bobcat has filed two separate motions to exclude the expert testimony of Christopher Ferrone; and (4) Defendant-Leppo filed a motion to exclude the expert testimony of Christopher Ferrone. I am denying all four for the reasons set forth in my Opinion below.[1]

---

[1] I already held a *Daubert* hearing related to Mr. Ferrone's testimony. The *Daubert* hearing was held on January 22, 2008, after Bobcat and Leppo filed separate motions challenging Mr. Ferrone's scientific methodology. After reviewing all motions and briefs and hearing live testimony from Mr. Ferrone during the *Daubert* hearing, I held that Mr. Ferrone's methodology was sound and that he could testify as an expert on behalf of Plaintiffs at the time of trial.

1

Plaintiffs' motion to amend or withdraw their prior admission (docket entry no. 140), involves the same admission that Bobcat currently relies upon as one of its bases to exclude Mr. Ferrone's testimony. Plaintiffs' argue that Bobcat will not be prejudiced by a withdrawal of this admission.

In one of its motions to exclude Mr. Ferrone's testimony (docket entry no. 136), Bobcat claims that during Mr. Ferrone's January 10, 2008 deposition, Mr. Ferrone discussed various industry standards and opined Bobcat did not comply with some of them when designing the machine at issue. Bobcat claims Mr. Ferrone's testimony contradicts Plaintiffs' previous admission wherein Plaintiffs admitted they had no evidence that the design of the machine at issue was contrary to any industry standard. Bobcat claims it relied on this admission. Additionally, Bobcat asserts that Mr. Ferrone's testimony should be excluded because his deposition testimony referencing the various industry standards exceeded the scope of his two reports which did not reference any industry standards.

In a separate motion to exclude Mr. Ferrone's testimony, Bobcat filed an "amended *Daubert* motion" (docket entry no. 134), suggesting: (1) that Mr. Ferrone's investigation of the machine at issue was unreliable under *Daubert*; and (2) his conclusions are nothing more than mere speculation.

Leppo's motion (docket entry no. 142) seeks to exclude Mr. Ferrone's expert testimony on the basis that he testified beyond the scope of his report.

## II. Factual Background

Currently, the only pending claims against Defendants sound in negligence. Plaintiffs assert Bobcat negligently designed the machine at issue and Leppo failed to adequately warn and train First Energy employees.

On June 8, 2006, in response to one of Bobcat's requests for admissions, Plaintiffs refused to admit they had no evidence that the machine's design was contrary to industry standards. However, instead of identifying one or more industry standards that ran contrary to the design, Plaintiffs explained their denial by stating discovery was on-going. In response to a motion filed by Bobcat, I ordered Plaintiffs to submit a more definite response. On July 7, 2006, Plaintiffs submitted a supplemental response admitting they had "no evidence at this time" that the machine's design was contrary to any industry standard.

In between their initial denial and their subsequent qualified admission, Plaintiffs submitted Mr. Ferrone's first report, dated June 27, 2006. Later they proffered his supplemental report dated September 7, 2006. Neither report referenced any industry standard nor indicated whether the machine's design was contrary to any industry standard.

Over a year later, on January 10, 2008, Defendants took Mr. Ferrone's deposition. During his deposition, Mr. Ferrone testified that he relied on some "other things" that he failed to list in his reports. Bobcat's counsel asked Mr. Ferrone to specify what "other things" he reviewed and/or relied upon when reaching his conclusions. The exchange reads as follows:

> Q. Is everything that you have reviewed and relied upon listed in the two reports, Exhibits 3 and 4, or are there others?
>
> A. There's other things that – because I've done this for so long that were in my head, and I just now have in the file that's not listed on the report.
>
> Q. Can you tell me, for instance, you're saying they're in the file but –
>
> A. Right, right.
>
> Q. – they're not listed on the report?
>
> A. Right. In other words, there was a big file of standards that I just pulled together

for today's benefit. That would be an example.

* * *

Q. When did you pull this together? This was for today's deposition?

A. Over the last week or so.

(Ferrone Tr. at 79.)

Per Mr. Ferrone's deposition testimony, this file contained ISO, SAE and other industry standards. He said some of these standards were:

> "...exactly on point, because they have the title earth moving equipment ... [a]nd then they have highlighted elements of them within that talk about exactly these issues. And then there are some that are generic and talk about machine design, and then there are some that are off the subject on other machinery that has nothing to do with this machine but shows the similar sort of synergistic philosophy."

(Ferrone Tr. at 80.) Mr. Ferrone then read the names of each standard he placed in this file and, in response to Defendants' counsels' questions, opined whether Defendants had complied with those standards. (Ferrone Tr. at 91-94, 162-164, 166-167, 178.)

Bobcat's own expert, Carmen Lynnes, was deposed on January 11, 2008. During his deposition he also identified and discussed several industry standards. (Lynnes Tr. at 23-27.) During his deposition he stated: (1) he had "most" of these standards at the time he prepared his expert report, (2) he did not have the ISO standards, but he was familiar with them, and (3) he culled together all of these standards – including those that Mr. Ferrone referenced which he did not have at the time he wrote his report – in the days preceding his deposition. (Lynnes Tr. at 23-24). Mr. Lynnes opined the standards to which Mr. Ferrone referred were not applicable to the machine at issue. (Lynnes Tr. at 23). He opined that when designing and developing equipment Bobcat paid "close attention to all of the applicable standards." (Lynnes Tr. at 24-25). In addition, he said the

4

person designing the machine would look at the standards. (Lynnes Tr. at 31). He identified himself as the person responsible for designing the machine at issue, and opined that Bobcat followed all applicable ISO and SAE standards when designing this machine. (Lynnes Tr. at 31-32).

### III. Legal Analysis

A.  **Plaintiffs' Motion to Withdraw their Admission (docket entry no. 140)**

Rule 36(b) and case law interpreting it govern this issue. Pursuant to Rule 36(b), an admitted matter is conclusive unless the Court permits the withdrawal or amendment of the admission. This rule states:

> (b) Effect Of An Admission; Withdrawing Or Amending It.
>
> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

F.R.Civ.P. 36(b) (2007).

In 1988, the Third Circuit refused to allow an amendment to an admission made by one of the parties. *Airco Industrial Gases, Inc. v. The Teamsters,* 850 F.2d 1028, 1035 (3d Cir. 1988). The *Airco* Court stated that because a Rule 36 admission was drafted by counsel for the express purpose of limiting and defining the facts in issue, it was conclusive and rose to the level of a judicial (not an evidentiary) admission. *Airco*, 850 at F.2d at 1036.

Despite the way that Rule 36 is viewed, courts in this district may permit withdrawal or amendment of an admission, thus vitiating the binding effect of the admission. *Coca-Cola Bottling Company of Shreveport, Inc. v. The Coca-Cola Company*, 123 F.R.D. 97, 103 (D.De. 1988). *See*

*also*, *United States v. Branella,* 972 F.Supp. 294, 301 (D.N.J. 1997) (courts have great discretion in deciding whether to amend or withdraw an admission); *Flohr v. Pennsylvania Power & Light Co.*, 821 F.Supp. 301, 306 (E.D.Pa. 1993) (the Court can, at its discretion, permit what would otherwise be an untimely answer to a request for admissions); *Kleckner v. Glover Trucking,* 103 F.R.D. 553, 557 (M.D. Pa. 1984) (it is clear from the language of Rule 36(b) that the Court has substantial discretion in deciding whether to allow withdrawal of that admission). Simply put, Rule 36(b) simultaneously emphasizes the importance of resolving an action on the merits while at the same time upholding a party's justified reliance on an admission in preparation for trial.

Rule 36(b) first requires a determination as to whether the presentation of the merits will be improved by permitting an admission to be revised. To make this determination, courts generally seek to ascertain whether the admission is contrary to the evidence of record. *Coca-Cola Bottling Company,* 123 F.R.D. at 103, citing *Branch Banking and Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 658-659 (E.D.N.C. 1988); *see also, Skoczylas v. Atlantic Credit & Finance, Inc.,* 2002 U.S. Dist. LEXIS 429, *13, No. Civ. A. 00-5412, (E.D.Pa. 2002) (a plaintiff's deemed admissions were directly contrary to facts that formed basis of plaintiff's complaint; by allowing amendment to the admissions, consistency with the facts averred in complaint would result and promote adjudication on the merits).

In *Dunn v. Hercules*, 1994 U.S.Dist. LEXIS 6445, Civ. No. 93-4175 (E.D. Pa 1994), the district court held that a plaintiff's withdrawal of admissions would assist the presentation of the merits in an ADEA case. The plaintiff obtained an expert report after admitting he did not have evidence supporting his pattern and practice claims and admitting he believed the claims were time-barred. The expert report supported these claims by suggesting the defendant engaged in continuing

6

violations. The *Dunn* court permitted the plaintiff to withdraw the admissions, finding that doing so would aid presentation of the merits of the action.

As applied to this case, Plaintiffs must show that withdrawal of their admission will assist the presentation of the merits of their negligent design claim. Testimony discussing the applicability of various industry standards was elicited from Plaintiffs' expert on January 10, 2008. Plaintiffs' expert said that certain industry standards applied to the design of the machine and opined that Bobcat failed to comply with these standards when designing the machine. This evidence contradicts Plaintiffs' admission, but is consistent with the negligence averments in their complaint. Because withdrawal of the admission will further the presentation of the merits of this case, the first prong of the two-part test to allow withdrawal is met.

The second prong of the test shifts the burden to Bobcat, requiring Bobcat to show that it would be prejudiced if the withdrawal is permitted. A party is not prejudiced by a belated response simply because his position is prejudiced by the true facts contained in the response. *The Maramont Corp. v. B. Barks & Sons, Inc.,* 199 U.S.Dist. LEXIS 278, *8, Civ No. 97-5371 (E.D.Pa.1999), citing *Beatty v. United States*, 983 F.2d 908, 909 (8th Cir. 1993). Generally, courts have defined prejudice as relating "to the difficulty a party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted." *Coca-Cola Bottling Company,* 123 F.R.D. at 105, citing *Gutting v. Falstaff*, 710 F.2d 1309, 1314 (8th Cir. 1983)*; Brook Village North Associates v. General Electric Co.*, 686 F.2d 66, 70 (1st Cir. 1982).

In *Coca-Cola*, the court found the party who obtained the admissions (the plaintiffs) would be prejudiced if the defendant's admissions were amended or withdrawn. 123 F.R.D. at 108-109. Specifically, the *Coca-Cola* court found that the admission had operated to preclude plaintiffs from

7

obtaining discovery over an 18-month period of time, and it further noted that the defendant unreasonably delayed in bringing about its motion to amend the admissions, choosing to wait until less than one month before the beginning of a related trial. *Id.* at 106-107.

In this case, there is no indication of such prejudice. Bobcat claims it is prejudiced by stating that it detrimentally relied upon Plaintiffs' admission that they had no evidence that the machine at issue was designed contrary to any industry standard. Bobcat claims that its "discovery strategy and trial preparation assumed that the issue of industry standards having been violated was no longer at issue..." and Plaintiffs' withdrawal of that admission injects "entirely new issues back into this lawsuit almost on the eve of trial...". (Bobcat Response to Plaintiff's Motion to Amend, p. 2).

First, Bobcat's "discovery strategy" could not have been affected by Plaintiffs' admission. Discovery ended on June 22, 2006, and Plaintiffs, pursuant to my June 26, 2006 court order, supplemented their response to Bobcat's request for admissions on July 7, 2006. Thus, discovery closed before Plaintiffs' admission was tendered to Bobcat. Second, Bobcat has failed to show how it is prejudiced by the Plaintiffs' withdrawal of the admission. Bobcat's expert, Mr. Lynnes, testified during his discovery deposition that at least some (if not all) of the standards upon which Mr. Ferrone relied to demonstrate lack of conformity with the design were not applicable to the machine at issue. In addition, Bobcat's expert testified that he bore responsibility for the design of the machine at issue, and Bobcat complied with all applicable design standards.

Clearly, Bobcat already possesses evidence which can be used to counter Mr. Ferrone's testimony that the design of the machine failed to conform with design standards. Because Bobcat fails to demonstrate any difficulty it would have defending against Mr. Ferrone's assertions, and because it fails to demonstrate a sudden need to obtain additional evidence in order to prove the

matter that had been admitted, the second prong of the Rule 36(b) test is met.

Rule 36(b) is permissive and I do not need to allow the withdrawal of the admission even if "both the merits and the prejudice issues cut in favor of the party seeking exception to the Rule." *Coca-Cola,* 123 F.R.D. at 103. In both *Coca-Cola* and *Dunn v. Hercules*, 1994 U.S.Dist. LEXIS 6445, Civ. No. 93-4175 (E.D. Pa 1994), the district courts noted that if the party seeking amendment or withdrawal of an admission had qualified the admission, the request to amend or withdraw would not have been necessary. *See, Coca-Cola*, 123 F.R.D. at 107 (defendant failed to show why it could not have qualified its initial or revised responses to plaintiffs' requests for admissions); *Dunn*, 1994 U.S. Dist. LEXIS 6445 *3 n.4 (plaintiff could have avoided the need to withdraw his admissions by simply supplying qualified responses to defendant's request).

Unlike the moving parties in *Dunn* and *Coca-Cola,* Plaintiffs in this matter qualified their admission in their supplemental responses to Bobcat's request. After writing the word, "[a]dmitted," Plaintiffs immediately qualified their answer by stating, "Plaintiffs have no evidence ***at this time***." (Emphasis added). Thus, seeing no reason for Plaintiffs to withdraw or amend their qualified admission set forth in their July 7, 2006 supplemental responses to Bobcat's requests for admissions, I deny their motion as moot.

**B.      Defendants' Motions to Exclude Mr. Ferrone's Testimony**

**1. Bobcat's motion to exclude expert testimony (docket entry no. 136) because expert contradicts prior admission and because he testified beyond the scope of his report**

Modern discovery rules, particularly Rules 26 and 37, were enacted to prevent civil trials from being "carried on in the dark." *Bowers v. NCAA*, 475 F.3d 524, 540 (3d Cir. 2007), citing *Hickman v. Taylor*, 329 U.S. 495, 500 (1947). However, excluding expert testimony as a sanction

9

is a drastic measure that should be imposed in only extreme situations. *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 905 (3d Cir. 1977). Exclusion of critical evidence should not occur absent a showing of willful deception or "flagrant disregard" of a court order by the proponent of the evidence. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (cite omitted).

The Third Circuit elucidated four factors to consider when determining whether expert testimony should be excluded: (1) the prejudice or surprise in fact of the party against whom the excluded witness would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the trial of the case; and (4) bad faith or willfulness in failing to comply with the district court's order. *DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, 1201-02 (3d Cir. 1978) (quoting *Meyers*, 559 F.2d at 904). Even if a trial court determines that an opposing party would be unfairly prejudiced or surprised by admitting the evidence, the inquiry does not end – the trial court must determine whether the unfair surprise or prejudice is curable. *Bowersfield v. Suzuki Motor Corp.,* 151 F.Supp. 2d 625, 632 (E.D.Pa. 2001)

"Testimony of an expert on matters within the expert's expertise but outside of the expert's report is not only permissible at trial, but the exclusion of such testimony may be reversible error. . . . An expert may testify beyond the scope of his report absent surprise or bad faith." *Bowersfield,* 151 F.Supp 2d at 631, citing *Fritz v. Consolidated Rail Corp.*, 1992 U.S. Dist. LEXIS 5807, 1992 WL 9628, *3 (E.D. Pa. Apr. 23, 1992) (citing *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir. 1978)). There is no local custom, practice or rule which limits an expert's testimony to the strict confines of the expert report. *Kelly v. GAF Corp.,* 115 F.R.D. 257, 258 (E.D.Pa. 1987).

10

In *Bowersfield*, the plaintiff's expert wrote a report listing ten conclusions supporting the plaintiff's theory that the design of Suzuki's vehicle was defective. *Bowersfield,* 151 F.Supp. 2d at 629. The defendants challenged this report under *Daubert*, arguing that the report was conclusory and that it lacked the requisite methodology. During the *Daubert* hearing, the plaintiff's expert specifically explained that the basis for many of his conclusions derived from the "hierarchy of engineering principles relating to design...". The court noted that these explanations were not included in his report. Upon applying the four-part test, the *Bowersfield* Court found that even though the plaintiff's expert substantially expanded on the details of his methodology and provided bases for his opinions during the *Daubert* hearing, his conclusions were consistent with those found in his report and permitted him to testify outside the scope of his report. The Court suggested that the defendants should have taken the expert's deposition soon after obtaining a copy of his conclusory report, but did not do so. The Court allowed the defendants to file supplemental expert reports and permitted the depositions of the experts to be taken as a means of curing any prejudice to the defendants.

Similar to the *Bowersfield* case, both Defendants claimed Plaintiffs' expert's reports were conclusory, and both Defendants challenged them under *Daubert* arguing lack of requisite methodology. In support of his conclusory opinion that Bobcat negligently designed the machine at issue, Mr. Ferrone testified during his deposition and at his *Daubert* hearing that Bobcat violated the hierarchy of design principles and various specific industry standards.

Applying the Third Circuit's four-part test to the facts of this case, I conclude that Mr. Ferrone's testimony should not be limited to what is set forth in his report and I permit him to testify about the bases for his opinions, which include his testimony related to industry standards.

First, Bobcat cannot be surprised by Mr. Ferrone's assertions that the design violates standards. As stated above, Plaintiffs supplied a <u>qualified</u> admission as a supplemental response to Bobcat's request, and Bobcat could have moved for a more definite statement. Additionally, Bobcat could have deposed Mr. Ferrone any time between September 7, 2006 through December 31, 2007, but did not depose Mr. Ferrone until twelve days prior to the *Daubert* hearing and 81 days before the start of trial. Bobcat offers no explanation for the delay in taking Mr. Ferrone's deposition. Bobcat cannot now benefit from its decision to postpone taking Mr. Ferrone's deposition until it was inside the 90-day window under Rule 26.

Second, even if Bobcat was surprised by Mr. Ferrone's testimony, Bobcat already possesses a cure. According to the expert testimony of Mr. Lynnes, Bobcat's expert, there was no applicable design standard that Bobcat did not follow, and he testified that he would know this because he bore responsibility for the design of the machine at issue. He also opined that at least some (if not all) of the standards upon which Mr. Ferrone relied to demonstrate lack of conformity with the machine's design do not apply to the machine at issue.

Third, since Mr. Lynnes is listed as Bobcat's expert witness and because he has already testified he was familiar with all standards applicable to the machine at issue, I see no reason for an unlisted witness to be called to testify at time of trial on this matter. I also find no evidence of bad faith and Bobcat points to none. Accordingly, I deny Bobcat's motion to exclude Mr. Ferrone's testimony.

**2. Leppo's motion to exclude expert testimony (docket entry no. 142) because expert testified beyond the scope of his report**

Like Bobcat, Leppo argues that Mr. Ferrone's deposition testimony exceeds the scope of his

report. For similar reasons, I deny Leppo's motion to exclude Mr. Ferrone's testimony.

With respect to Leppo, Mr. Ferrone expressed two opinions, one in each of his reports. In the first report he indicates Leppo failed to properly train First Energy employees (of which Mr. Altman was one); and in the second report, he states Leppo failed to adequately train First Energy in the issue of safe engine RPM if someone is in the swing arm radius.

Using the *DeMarines* four-part analysis, I find no surprise or prejudice to Leppo because there is little, if any, distinction between the conclusions Mr. Ferrone made in his reports and the statements made during his deposition. Mr. Ferrone generally concluded in his first report that Leppo failed to properly train First Energy employees, then specifically concluded in his second report that Leppo failed to adequately train First Energy on safe engine RPM when someone entered the swing arm radius. During his deposition he specifically testified that Leppo failed to warn or train First Energy employees as to what to do if an individual ventured into the swing arm radius of the machine. Given the fact that I do not find any evidence that Mr. Ferrone's deposition statements vary from statements made in his reports, I do not need to look for a cure, nor do I find any reason Leppo would need to call an unlisted witness in light of Mr. Ferrone's testimony. Like Bobcat, Leppo cites no evidence of bad faith and I find none.

As a point of clarification, Leppo argues in its motion that in my summary judgment order I limited Plaintiffs to pursuing two claims against Leppo: (1) that Leppo failed to adequately warn Plaintiff Altman of the hazards of being struck by the machine; and (2) that Leppo failed to train Plaintiff Altman and others similarly situated who venture inside the swing arm radius. The statements set forth in my opinion were characterizations of Plaintiffs' arguments in opposition to Leppo's summary judgment motion, nothing more. Plaintiff is asserting a negligence claim against

13

Leppo and Plaintiffs' expert, Mr. Ferrone, will be permitted to provide opinion testimony providing the basis for his conclusions relating to this alleged negligence. Therefore, I deny Leppo's motion to exclude Mr. Ferrone's testimony.

### 3. Bobcat's amended *Daubert* motion (docket entry no. 134)

I held a *Daubert* hearing on January 22, 2008 after Bobcat and Leppo filed separate motions challenging Mr. Ferrone's testimony claiming it lacked the requisite methodology. After reviewing all motions and briefs and hearing live testimony from Mr. Ferrone during the *Daubert* hearing, I held that Mr. Ferrone's methodology was sound and that he could testify as an engineering expert on behalf of Plaintiffs at the time of trial.

Bobcat suggests: (1) that Mr. Ferrone's investigation of the machine at issue is unreliable under *Daubert*; and (2) his conclusions are nothing more than mere speculation. Relying on *Oddi v. Ford Motor Company*, 234 F.3d 136 (3d Cir. 2000) in support of its amended *Daubert* motion, Bobcat draws parallels between Mr. Ferrone and an expert who was excluded from testifying in *Oddi*. Bobcat explains it failed to raise these arguments in its initial *Daubert* motion because it only learned various facts upon taking Mr. Ferrone's deposition, which did not occur until January 10, 2008.

I am not persuaded by any of Bobcat's arguments. First, Bobcat could have deposed Mr. Ferrone well in advance of the *Daubert* hearing. Bobcat decided to depose Mr. Ferrone 12 days prior to the *Daubert* hearing. In addition, instead of filing this amended *Daubert* motion within a day or two of Mr. Ferrone's deposition, several days or a week in advance of the *Daubert* hearing, Bobcat waited until 15 minutes prior to the start of the *Daubert* hearing to file this motion. On January 22, 2008, I determined that based on all arguments made by both Defendants and based on all the

evidence received, including the live testimony of Mr. Ferrone, Mr. Ferrone's methodology met the *Daubert* standard. Accordingly, my prior decision stands and to the extent Bobcat's current motion seeks to re-litigate that matter, their motion is denied.

Second, the facts of the *Oddi* case are readily distinguishable from this one. The plaintiff's expert in *Oddi* rendered opinions about the design of a bumper on a motor vehicle and claimed it was defective because it should not have bent back and inward toward the vehicle upon impact with a guardrail. *Oddi,* 234 F.3d at 147. This expert, Mr. Noettl, could not account for the amount of force with which the vehicle struck the guardrail and admitted he had no idea how much force it took to bend the bumper back. *Id.* at 149. He also did not consider the design of the guardrail. *Id.* at 157. Although Mr. Noettl suggested modifications for the bumper, he did not test them and admitted that his suggested modifications could actually result in greater injury to a person. *Ibid*. Mr. Noettl admitted that part of his investigation included observing trucks in a grocery store parking lot, but he did not make a record of any of his observations.

In affirming the district court's decision to exclude his testimony, the Third Circuit held:

> ... Noettl conducted no tests and failed to attempt to calculate any of the forces on Oddi or the truck during this accident, he used little, if any, methodology beyond his own intuition. There is nothing here to submit to peer review, and it is impossible to ascertain any rate of error for Noettl's assumptions about the forces that caused Oddi's horrific injuries. Similarly, no standards control his analysis, and no "gatekeeper" can assess the relationship of Noettl's method to other methods known to be reliable and the non-judicial uses to which it has been put. Clearly, the district court did not abuse its discretion in excluding Noettl's proffered expert opinion testimony.

*Id.* at 158.

In this case, Mr. Ferrone has provided Bobcat with general design standards and specific industry standards which he opines apply to the machine at issue and which he contends Bobcat

15

failed to meet. He has provided Bobcat with alternate designs, one of which is currently being used on the very machine that injured Plaintiff Altman. Mr. Ferrone also believes other alternate designs are used on comparable, competitor machines. Presumably, the alternate (or modified) design found on the machine at issue has been readily accessible to Bobcat for review and testing. In addition, Mr. Ferrone reenacted the incident and tested the machine at issue (in its revised state) by using a person who was the same height and wore the same shoe size as the driver who struck Plaintiff-Altman. His investigation also included sending several employees to observe other machines and gather data.[2] Given these distinctions, I find Mr. Ferrone's expert testimony meets the *Daubert* standard.

---

[2] Since this is not a crashworthiness case like *Oddi*, the amount of force exerted by the swing-arm on Plaintiff is not at issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Thomas Altman and Roxana Altman, husband and wife,

    Plaintiffs,

-vs-

Ingersoll-Rand Company a/k/a Melroe-Ingersoll-Rand t/d/b/a Bobcat, et al.

    Defendants.

Civil Action No. 05-956

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this 4th day of March, 2008, for reasons set forth in the accompanying Opinion, Plaintiffs' Motion to Amend or Withdraw Admission (docket entry no. 140) is denied as moot; Defendant-Bobcat's Motion in Limine to Exclude Plaintiffs' Expert Testimony (docket entry no. 136) is denied; Defendant-Leppo's Motion in Limine to Exclude Plaintiffs' Expert Testimony (docket entry no. 142) is denied; and Defendant-Bobcat's Amended *Daubert* Motion (docket entry no. 134) is denied.

BY THE COURT:

s/ Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge